Good morning, Peter DeBruin representing the petitioner Jose De La Cruz Bautista. Your Honor, in this case basically we don't have a country condition report because the immigration judge precluded it because as an evidentiary sanction for the government not timely proffering that report. Well, that's not my understanding of the record. It appears there were two country reports. One was admitted and the other one was only marked for evidence. There were two. I think the dissenting person here made a mistake. I don't recall there was a second report introduced. I remember, Your Honor, that during the trial procedure the trial judge made up there was a lot of comments about that he thought that this should be a judicial fact, that we really didn't need the reports. It was taking up a lot of our time going over these kind of reports and it was just common knowledge. And so, therefore, would account for the fact that in his decision was sort of an alternative decision. He said if he found my client credible, but he also found that in light of the fact of the country conditions in two and one, he didn't see the persecution. Well, the problem that I'm having with your position is, as far as I can tell, it's not clear what the problem was between the guerrillas and your client in terms of any one of the factors that falls into one of the categories. He says he had no political opinion. I mean, wasn't that his testimony? I had no political opinion. So, if that's the fact, how do we get around the requirement that there's got to be persecution on account of political opinion? He said, I didn't have one. I just didn't want to go to work for him. Well, if you take into account the fact that it's a status kind of situation, in this case, he had completed honorably honorable discharge from the Guatemalan Army for three years. So, it would appear to me that they were seeking him out for the fact that they could use his expertise because he knew the ins and outs of the guerrilla warfare and so on. Where is that in the record? It is in the record that he testified. And that's why they were seeking him out. Well, no, not necessarily. But what other reason would they ask him to apply for a job? They were asking us to fill in a blank. And you're saying, well, but here's a reason that would fill in the blank. The record is a blank on that. Well, the other member… He says I had no political opinion. I just didn't want to go to work for him. In a sense, that is a political opinion. I don't see how you cannot have an opinion, how that is not an opinion. I mean, it's like saying… The Supreme Court said it's not. I mean, it seems to me your biggest obstacle here is getting around Elias Zacharias. I don't see the distinction between the facts in that case and the facts in this case. I don't believe the petitioner in that case was in the military, if I remember. They were trying to recruit him. And the problem with the Supreme Court was the issue Judge Schraut was just questioning you on, and that is where's the nexus here between political opinion and forced recruitment to the guerrillas? You're trying, I think, if I understand your argument, you're trying to suggest that there's an imputed political opinion… That's correct. On the fact that he was a soldier in the military. And the Supreme Court said in Elias Zacharias that that's not good enough. That doesn't establish the nexus. You've got to be able to show it was because of a political opinion. Well, I would respectfully disagree with even that case because… With Elias Zacharias? On that basis… So they were wrong? I think so. Okay. And we'll tell them that. They slapped us down in that case, too. I mean, the Ninth Circuit's had an unbroken record of getting clobbered on the head by the Supreme Court when we reach out in these areas. And we keep getting told, look, read the statute. It says persecution on account of. If there's nothing in there that shows the on account of, they haven't established persecution. Especially in a sense that it's got to compel all reasonable fact-finders to so conclude. Well, it's sort of like religion is how you lead your life, not where you go to church. I mean, it's not all that clear that you can have no opinion whatsoever or almost a vacuum. I mean, even though he testified that way, it may not be that way. Aren't we stuck by what he said? Well… Or are we supposed to say, well, he may have said he had no political opinion, but he had one. Could we write that and get away with that? Well, he said he didn't believe in what the guerrillas were aspiring to. Isn't that an opinion? And in a country at war, isn't that a political opinion? That's not what Mr. Justice Scalia said. Not good enough. How can we distinguish that controlling Supreme Court case from these facts? Well, there was also other… His brother was also in the military, and they pursued him according to the evidence, and he was tortured and executed five years after the petitioner left the country. They were still active. These people owned land, and they worked the land. There was no other place they were going to, and it seems like they were particularly a target for that reason. I don't know. Okay. I don't know, Your Honor. Basically, I think that the fact that he went through the military, in a sense, if you're not with us, you're against us, is the kind of thing I see here. I mean, it might not be expressly pointed out, or he might not be running banners around his house or whatever, but he was in the military, and he served the country, and he was discharged honorably. That's all very plausible, but do you understand the standard of review? We've been told by the Supreme Court that we can't just fill in blanks and go with something that probably could have, should have, or would have been. It's got to compel. The evidentiary record has to compel any reasonable fact finder to conclude in favor of your client. It's pretty hard to say it compels it when there's so many holes in the chain. Well, why don't we hear from the government, and we'll give you an update. Thank you. Good morning, Your Honors. May it please the Court, my name is Jeffrey Buckel. It's from the Justice Department here on behalf of Respondent John Ashcroft, the Attorney General. I'm going to try to be brief and address the points that the Court raised just now. First, briefly, on the country report issue, I think that what Your Honors pointed out about the record is correct.  The petitioner never objected to its admission. It is part of the record, and there's no issue with it. There was also marked as Exhibit 6 for identification a 2000 country report, which the immigration judge said he was not going to consider because the INS had not proffered it timely. As the INS attorney pointed out at page 97, it didn't matter whether the 2000 country report was admitted or not because he already had the 1997 profile. Do we even get to that issue? I mean, isn't that the second problem? I would agree that we don't get to it, Your Honor. You've got to show the nexus on persecution before you ever get to how you then rebut the presumption that arises once you get over the first problem. I couldn't agree more. And because of the way the proceedings went in the agency, the Attorney General never had the burden to prove that conditions had changed. So I would agree completely with that, but I wanted to just make sure that the record was clear on that point because the petitioner had raised it. On the nexus to political opinion, again, I'm going to try to be brief. Elias Zacharias and plenty of subsequent decisions of this court, including Cruz Navarro, Molina Estrada, lots of others, make it very clear that, as Judge Trott said, it's not enough for a nexus to political opinion to be plausible. You can't just presume it. There has to be actual evidence that, number one, the guerrillas here imputed the political opinion to the petitioner that was hostile of their own, and, number two, that they persecuted him on account of that reason instead of for some other reason. There's just no evidence of either of those two facts. And the petitioner argues that the only distinction that he can raise between his case and Elias Zacharias is that he was in the military. It's true that he was in the military, but there is no evidence that the guerrillas who persecuted him in San Marcos from 1988 to 1990 knew that he had been in the military. His asylum application, which is at page 178, I believe, says that while he was in the military, guerrillas harassed him. He was in the military, not in San Marcos, but in a different part of the country. There's no evidence that the guerrillas who harassed him once he got out of the military and went back home to San Marcos in March 1988 and subsequently were the same guerrillas or even part of the same small group of guerrillas that had harassed him while he was in the army. There's no other evidence that would support a finding that the guerrillas who harassed him in San Marcos knew that he had been in the military. And as Your Honors emphasized, the question is not whether there's evidence to support that finding, but whether there's evidence to compel it. And I would point out that the standard of review in this case, as in many others, is very important. And the petitioner here has argued, I guess the best the petitioner can say, if you looked at his reply brief at page 3 or his opening brief at 6 or 12, is that a reasonable fact finder could have found that the guerrillas knew that he had been in the military, believed for that reason he had a hostile political opinion, persecuted him on account of that fact. Even if a reasonable fact finder could have found those facts, and I would disagree that one could have because for the reasons I was just saying, there's no actual evidence of those facts. But that's not the point. The more fundamental point is, on review in this court, this court can't disturb the agency's decision unless there's evidence so compelling on those facts that no reasonable fact finder could have found differently. Let's suppose that the guerrillas were the same or they're connected with the same people, and the guerrillas knew that he had been in the military, and while he was in the military, they tried to recruit him to leave the military and join them, and he refused to do so. Would that be enough to attribute imputed political opinion to the guerrillas? No, Your Honor. That would not be enough to support, let alone compel, a finding that the guerrillas in San Marcos in 1988 to 1990 persecuted Fishner on account of Fishner's political opinion. Elias Zacharias makes clear it's Fishner's political opinion that matters, and you have to find, number one, that the guerrillas imputed political opinion to him. Number two, they persecuted him because of that imputed political opinion. What's logical, it seems to me, is that the fellow would say, well, I don't want to desert the Army and join you. I'm not going to do that. And then he says, I have no political opinion. I think he testified to that, didn't he? He testified expressly that he had no political opinion at the time of this alleged persecution. That's true. Well, the IJ does say he decided he was not for them or did not favor their position. That's as close to something I could find with political opinion. I see in the record where the IJ said that. There's no evidence to support that. That's, I think, in the nature of an offhand comment by the IJ, and there's no actual evidence of that. If you read his asylum statement, he doesn't say that, and certainly nowhere in the 11 pages of his testimony on this issue is there any indication of that. I marked that and looked for support for it, and I couldn't find it. As did I. As did I. Just to finish answering Judge Thompson's question, as a matter of law, even if it were undisputed, and let me make clear my position is that not only is it not undisputed, but there's no evidence to support a finding of the guerrillas in 1988 to 1990 knew he'd been in the military. But even if that were undisputed, that would not be enough. If you look at the Cruz Navarro case, in that case, it was clear that those who were persecuting, this was in Peru, that the guerrillas who were persecuting the petitioner knew that the petitioner was aligned with the government. When they persecuted him, they yelled at him, top and informer. So that was undisputed, that they were acting because of his status as someone aligned with the government. But still, this court upheld the agency's decision because there was no evidence that the guerrillas had imputed any political opinion, as opposed to any status, to the petitioner. And alas, Zacharias makes clear that status is not political opinion, and that not taking sides cannot be presumed without actual evidence of political opinion to be a political opinion. Molina Estrada, I believe, is a similar case, where in Guatemala, guerrillas attacked the petitioner's family because the petitioner's father was a high-ranking officer in the military. And it was clear on the facts there that the guerrillas knew that the petitioner's father was a military officer. Even if it was assumed that that was why they were attacking the petitioner's father, the court drew a distinction between status as someone in the military and a political opinion. The statute requires political opinion, and the standard review requires compelling evidence that the guerrillas acted because they thought that the petitioner here had a political opinion contrary to their own. And here, there just isn't any evidence to support that, let alone to compel it. I'd be happy to answer any questions the court would have. Thank you. I think there might be a difference. In this case, my client was basically harassed over a period of several years. It wasn't like one instance. It was a constant harassment. And it wasn't because of political opinion. It's certainly for recruitment purposes, because they would have stopped asking him or harassing him a long time prior to that. So there must be some other reason why. Maybe it's not obvious in the record, but it seems to me that constantly doing this abusive behavior was for some other reason than just for recruitment. Thank you.
judges: Thompson, Trott, Tallman